UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Grace Katherine Cameron,<br><br>  Plaintiff,<br><br>  v.<br><br>Commissioner of Social Security,<br><br>  Defendant. | No. 1:24-cv-01137-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc 13, 17)** |

### I. Introduction

Plaintiff Grace Katherine Cameron appeals the decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

### II. Factual and Procedural Background

On January 20, 2021, Plaintiff applied for SSI benefits alleging disability beginning January 1, 2007. The agency denied the application initially on August 12, 2021, and on reconsideration on November 19, 2021. The ALJ held a hearing on November 1, 2023. AR 33–50. The ALJ issued an unfavorable decision on November 21, 2023. AR 14–32. The Appeals Council denied review on July 23, 2024 (AR 1–6) and this appeal followed.

### III. The Disability Standard

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits. Reversal is appropriate when the ALJ's findings are based on legal error or

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. Docs. 7, 8.

1

unsupported by substantial evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is that which could lead reasonable minds to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The Ninth Circuit has explained that "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant

work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to provide evidence that the Plaintiff is capable of performing other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.     **The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the SSI application date of January 20, 2021. AR 19. At step two the ALJ found that Plaintiff had the following severe impairments: intellectual disorders, generalized anxiety disorder, and autism spectrum disorder. AR 19–20. At step two the ALJ also concluded that the claimant had a non-severe impairment of "disorder of the skin." Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20–22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the following RFC:

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember, and carry out simple instructions, make commensurate work related decisions, respond appropriately to supervision, co-workers, and work situations, deal with routine changes in the work setting and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday, and is suitable for jobs requiring only occasional changes in the work setting and would not be suitable for production rate or pace work.

AR 22–27.

At step four, the ALJ concluded that Plaintiff had no past relevant work. AR 27. At step five, in reliance on the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: marker, hospital cleaner, and dining room attendant. AR 27–28. Accordingly, the ALJ concluded that Plaintiff was not disabled

since the SSI application date of January 20, 2021.  AR 28.

## V.  Issue Presented

Plaintiff's opening brief[2] asserts that the ALJ erred by failing to evaluate Dr. Chang's medical source opinion.  Relatedly, Plaintiff asserts that the ALJ failed to resolve conflicts in the medical opinions and that the error was not harmless.  MSJ at 11–15.

### A.  Applicable Law

Before proceeding to steps four and five, the ALJ must determine the claimant's residual functional capacity which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  The Residual Functional Capacity must consider all of the claimant's impairments, whether or not the impairments are severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate the pre-existing hierarchy of medical opinions.  The revised regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are

---

[2] For future reference, per the scheduling order, Plaintiff's filing is to be designated as a motion summary judgment, and Defendant's response as a cross motion for summary judgment. This is ordered for a variety of reasons, including streamlining case statistics and ensuring accurate accounting of same.  Scheduling Order at 2, ECF No. 5.

4

considered. *Id.*

Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### B. Factual Background

Providers diagnosed Plaintiff, when Plaintiff was a child, with unspecified cognitive and developmental coordination disorder and ADHD with school accommodations recommended. AR 322–27, 373. Plaintiff underwent occupational therapy in 2012–2014 for gross and fine motor development and was prescribed Focalin for ADHD. AR 331, 373–76. In high school Plaintiff was on a modified plan with shortened assignments and grading based on effort rather the test scores, no foreign language requirement, and it was suggested that she was on the autism spectrum despite no corresponding diagnosis. AR 288. She graduated in 2019. Id.

In a December 2022 letter, longtime pediatrician Dr. Kratzer opined that Plaintiff's learning disorders, cognitive impairment, and ADHD were permanent. AR 339. Her father's company created a remote part time job for her, 2hrs/day, 2 days a week reconciling deposits between accounts. AR 309. In September 2023 she was diagnosed with autism spectrum disorder,

generalized anxiety disorder (GAD), and again with ADHD in lieu of all other prior diagnoses. AR 388–89.

She testified she stopped working for her father's company in 2022 after which she unsuccessfully applied for other jobs. AR 40. She attended college with accommodations such as open book tests. AR 41–42. She has no driver's license. Id. She enjoys coloring and art projects, doing so by herself. Id. She washes dishes and manages her belongings. AR 43. She needs daily medication reminders. AR 43-44. She worked in isolation at her father's company. Id. She has no friends and had none in school. Id. She sometimes needs reminders to groom. AR 45. She could independently grocery shop if given a written shopping list but not an oral list. Id.

    **C.**    **Analysis**

        **1.**    **Summary of Dr. Chang's Examination and Opinion**

In September 2023 clinical psychologist Dr. Chang evaluated Plaintiff. AR 371–90. She discontinued Focalin in 2020 as unhelpful. AR 373. Dr. Chang confirmed Autism Spectrum Disorder without intellectual or language impairment, and ADHD. AR 371–86. Dr. Chang confirmed GAD due to symptoms of avoidance of crowded places, emotional dysregulation, rumination, sleep disturbance, and negative self-talk. Id.

Dr. Chang opined as to the following limitations, among others: 1- marked deficit in social interaction; 2-marked deficit in understanding and using nonverbal cues; 3-marked deficit in adjusting behavior to social contexts and relationship development; and 4- marked limitation of an insistence on sameness (extreme distress with small changes and transitions, fixated interests "that are abnormal in intensity or focus", and 5- "hyper or hypo-reactivity to sensory input" in her environment). AR 389. Dr. Chang further opined that Plaintiff's marked limitations "appear frequently enough to be obvious to the casual observer and interfere with functioning in a variety of contexts" and require "substantial support" to redirect her from the fixated interest. Id.

2. **Analysis**

The ALJ adopted Dr. Chang's autism spectrum diagnoses, but thereafter Plaintiff contends the ALJ only generally referenced Dr. Chang's findings but failed to evaluate the consistency or supportability of the limitations Dr. Chang identified in the opinion.  MSJ at 13.

The ALJ provided the following discussion of Dr. Chang's evaluation:

> The claimant underwent a psychological evaluation on September 19, 2023. Her mother reported that her primary concerns regarding the claimant were here impulsivity, inattention, and low frustration tolerance. <u>That evaluation noted significant impairment in social/emotional reciprocity, causing the claimant to misinterpret social interactions, overreact to perceived slights, and struggle with reciprocal conversations. Other areas where the evaluation noted significant impairment was in non-verbal communication and the development of social interests. She demonstrated an insistence on sameness, inflexible adherence to routines, and hyper as well as hypo-reactivity to sensory inputs. The claimant's eye contact was inconsistent and her facial expressions were limited.</u> Her full-scale IQ score during WAIS-IV testing was 75, again in the borderline range. She again scored in the borderline range in perceptual reasoning, working memory, and processing speed. Her ability to sustain attention, concentrate, exert mental control, and process simple or routine visual material was in the borderline range. The overall testing found that the claimant met the criteria for autism spectrum disorder without intellectual or language impairment, and the examiner also diagnosed generalized anxiety disorder. (Ex. 7F).
>
> . . .
>
> The claimant was appropriately dressed for her September 19, 2023 psychological evaluation. Her grooming and hygiene were good and she was dressed appropriately. She put forth fair effort on most tasks. She scored in the average range in verbal comprehension during WAIS-IV testing. She was able to speak in complex sentences without grammatical errors. (Ex. 7F).

AR 24–25 (emphasis added).

Here, the ALJ did not revisit Dr. Chang's "evaluation," or the limitations identified therein when subsequently addressing the <u>medical opinion evidence</u>.  This is problematic from the outset because the above discussion was part of a <u>recitation</u> of all evidence, not a reconciliation of conflicting evidence, nor an analysis of the merits of medical opinion evidence.

Defendant contends that Dr. Chang's statements do not constitute medical opinions because

they are not statements "about what [a claimant] can still do despite [their] impairment(s)," and whether they have limitations in specific work-related abilities. 20 C.F.R. § 416.913(a)(2). Defendant explains that by contrast, "judgments about the nature and severity of [a claimant's] impairments" as well as a claimant's clinical findings, medical history, diagnosis, or prognosis are considered "other medical evidence." 20 C.F.R. § 416.913(a)(3).

For example, Defendant contends that Dr. Chang's opinion as to marked deficiencies in social-emotional reciprocity, nonverbal communication, and similar statements are not medical opinions as they fail to address the extent to which Plaintiff could interact with coworkers, the public, or supervisors in a work setting. Resp. at 5 (citing AR 388). The argument is not persuasive. The deficiencies in those aptitudes would manifest in the claimants' ability to interact with coworkers, the public, and supervisors--the only categories of people an employee interacts with in the common workplace.

The extent and nature of Plaintiff's social interaction limitations as opined by Dr. Chang, do constitute a medical opinion. Granted, in the RFC, ALJ's invariably express the extent to which a claimant can interact with others quantitatively: occasionally (1/3 of an 8 hour day per); frequently (2/3 of an 8-hour day), etc.

Yet this is not the only manner to express mental limitations. Specifically, the agency maintains a prototypical check-box form for use by consultants and providers alike.[3] For instance, the "Mental medical Source Statement of Ability to do Work-Related Activities (Mental)," abbreviated as the "MRFC Questionnaire, expresses all mental work-related limitations qualitatively: none, mild, moderate, marked, severe. Dr. Chang's use of the term "marked" should

---

[3] (Medical Source Statement of Ability to Do Work-Related Activities (Mental)), available at https://omb.report/omb/0960-0662 (SSA uses Forms HA-1151 and HA-1152 to collect data that is required to determine the residual functional capacity (RFC) . . . respondents are medical sources paid by SSA to provide reports based either on existing medical evidence or on consultative examinations conducted for the purposes of the report).

be interpreted no differently than a consultative and treating providers interpretation of that word—and the ALJ's use thereof in the step two psychiatric review technique (PRT) —namely, a marked limitation means little to no ability to perform that work activity.

As to the <u>nature</u> of the limitation, ALJs and the MRFC questionnaire simply use the term "social interaction," whereas Dr. Chang's questionnaire by contrast used terms such as: <u>social approach</u>, <u>failure of normal back-and-forth conversation</u>, inability to understand and use <u>nonverbal cues</u> in communication, deficits "in developing, maintaining, and understanding <u>relationships</u>", and "difficulties adjusting behavior to suit various <u>social contexts</u>." AR 388. Here, Dr. Chang's descriptive narrative is actually more specific and useful than the unadorned use of the term "social interaction" as she describes the abilities that underly "social interaction."

In sum, Dr. Chang's use of the term "marked" is not anomalous. The more detailed breakdown of "social interaction" in terms of its constituent parts, although perhaps unusual, is more helpful than the use of the term "social interaction" in isolation. Thus, Dr. Chang's statements constitute a medical opinion.

Further—as mentioned above—the ALJ did not discuss Dr. Chang's opinion, or its merits/lack thereof, in the section discussing the persuasiveness of medical opinions as was done with the opinions of Drs. Kratzer, Dunn, Medoza, and Morgan. AR 26. Importantly, the ALJ specifically disregarded Dr. Kratzer's statements because they were "not a medical opinion." <u>Id.</u> The ALJ did not make the same comment about Dr. Chang's statements but rather made no comment about them. In any event, Defendant's contention that Dr. Chang's statements do not constitute a medical opinion is not persuasive.

Defendant further argues that 1- this section of Dr. Chang's report concerned Plaintiff's self-reported "pattern of symptoms" (AR 376), not a clinical assessment of Plaintiff's limitations in work-related areas of functioning, and 2- Dr. Chang also indicated later in the report that her

assessment of Plaintiff's social deficits was based on Plaintiff's "history and responses to questions" (AR 387).  This argument is undermined as the very next page of Dr. Chang's report sets forth not symptoms but objective findings as to DSM diagnostic criteria for Autism Spectrum Disorder reflecting the same marked limitations discussed above.  AR 388–89.

Defendant further contends as follows:

> Moreover, the ALJ still considered Dr. Chang's report in his decision, and his analysis shows that he considered the supportability and consistency factors. Tr. 20–21, 24–26 . . . The ALJ acknowledged the significant impairment noted by Dr. Chang in various areas of social functioning—<u>and the ALJ discussed the doctor's exam findings, which largely supported those deficits</u>. Tr. 19–20, 24. . . . For example, <u>the ALJ considered Plaintiff's testing with Dr. Chang showing extremely low scores in social skills</u>. Tr. 20 (citing Tr. 370–90). The ALJ also discussed how Dr. Chang noted significant impairment in social/emotional reciprocity, non-verbal communications, and the development of social interests, and he agreed with Dr. Chang that these symptoms were consistent with a diagnosis of autism spectrum disorder and anxiety disorder. Tr. 19, 24 (citing Tr. 370–90).

Resp. at 5–6.  (emphasis added).

Again, the ALJ's discussion was in the factual recitation portion of the ALJ's decision, not in the analytical portion of the opinion evidence.  Defendant also concedes that the supportability factor weighs in favor of Dr. Chang's opinion.  Defendant goes on:

> However, the ALJ also discussed how other evidence in the record showed generally intact social functioning, in contrast to the social deficits noted in Dr. Chang's single exam. Tr. 20–21, 24. . . As the ALJ discussed, a 2021 consultative examination showed that Plaintiff was calm, relaxed, and alert, with adequate speech, and Plaintiff was able to testify about her condition at the administrative hearing. Tr. 20–21, 40–45, 330–33. In addition, the ALJ noted that Plaintiff was looking into a vocational training program, was looking for work on her own, had completed high school and a few years of college, and was able to work a couple days per week at her dad's company. Tr. 24, 40–41, 44, 332. Further, the ALJ found persuasive the findings of the state agency psychological consultants, who both found that Plaintiff had no limitations interacting with others. Tr. 26, 58, 75. Therefore, the ALJ reasonably considered and rejected Dr. Chang's evaluation . . .

In tackling these points in reverse order, it should first be noted that state agency psychologists' non-examining "opinions" at the initial and reconsideration levels, more appropriately known as prior administrative <u>findings</u> (PAMFs), have minimal independent

10

evidentiary value. They are not on par with examining source opinions.[4]

Second, Defendant's discussion of Plaintiff's vocational and educational pursuits is unpersuasive. <u>Looking into</u> a vocational training program and independent work is not the same as <u>completing</u> a vocational training program and <u>obtaining</u> independent work. While Plaintiff did complete high school and some college, she had accommodations: grading on effort rather than performance;[5] one-on-one aid; open book tests with extra time. AR 24, 41–43, 288. As for her work at her father's company, it was a position he created for her to work 2 days a week at 2 hours a day. AR 309. It was simple clerical work comparing two sets of numbers to see if they matched or if accounting had made a typo. AR 309. She wouldn't work unless reminded. <u>Id.</u> When she had difficulty logging into her email account, she thought she was fired. <u>Id.</u>

Third, Defendant provides no authority for the notion that the ALJ can base his/her RFC determination on the ALJ's independent observations of Plaintiff's presentation at the administrative hearing. The ALJ is not a medical or vocational expert.

Fourth and finally, although the ALJ did appropriately observe that a 2021 consultative examination showed that Plaintiff was calm, relaxed and alert with adequate speech, this is an isolated example. Further, these observations are rather surface level compared to Dr. Chang's 20-page report based on objective testing. Additionally, the nature of the observations—calmness, relaxation, alertness, and adequate speech—do not contravene the marked social interaction deficits that Dr. Chang identified.

In sum, the ALJ merely recited the contents of Dr. Chang's opinion. The ALJ provided no

---

[4] Notwithstanding that the March 27, 2017 revised regulations eliminated opinion "hierarchy." Although the state agency consultants' PAMFs are relevant considerations under the regulations (20 C.F.R. § 404.1513a(b)(1)), they constitute substantial evidence <u>only when supported by independent clinical findings or other evidence</u>. Saelee, 94 F.3d at 522; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995)); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Thus, they have minimal evidentiary value. Not by virtue of their status in the "hierarchy" of medical opinion evidence, but because controlling authority still holds that these PAMFs have little independent evidentiary value.

[5] With the exception of 3 art classes which used standard grading and which she excelled.

11

analytical discussion, and did not revisit it when weighing the persuasive value of the other medical opinions. Further, contrary to Defendant's assertion, the broader contextual RFC discussion fails to fill in the blanks. The ALJ did not evaluate the supportability or consistency of Dr. Chang's opinion, thus remand is warranted for the ALJ to do so.

**VI.    Conclusion & Order**

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 13) is **GRANTED**.
2. Defendant's cross motion (Doc. 17) is **DENIED.**
3. The Clerk of Court is directed to enter judgment in favor of Plaintiff against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **September 1, 2025**              /s/ Gary S. Austin
                                             UNITED STATES MAGISTRATE JUDGE